NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**AMY E. POTTER**
**JOHN BRASSELL**
Assistant United States Attorneys
amy.potter@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:   (541) 465-6771
Attorneys for the United States of America


# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON


| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:22-cr-00410-AA** |
| **v.** | **UNITED STATES' MOTION TO CONTINUE DETENTION** |
| **BRANDON KUPER,** | |
| **Defendant.** | |


Defendant Brandon Kuper was using Discord and Snapchat to find young girls online in order to convince them to send him pictures of them naked, videos of them masturbating, and pictures of them bleeding after having cut themselves.  Sometimes they were even asked to cut his username—Merqzs—into their skin or write his name on themselves.  He clearly liked these images—Kuper's phone home screen is a nude female with cuts on her breast that are bleeding down her stomach and Kuper's username is written between her breasts in marker.

The number of victims of Kuper's crimes remains unknown, but he is currently indicted for production of child pornography and enticement of a minor based on his victimization of a

**United States' Motion for Detention**                                                    **Page 1**

13-year-old child in Oregon (MV1).  Kuper was detained in the Western District of Washington

as a danger to the community and remanded to the District of Oregon.  Because he is a danger

and a flight risk, he should remain detained pending trial.

**Factual Background**

MV1, a 13-year-old girl in Oregon, was introduced to Kuper by another minor (a 16-

year-old female, MV2).  *See* Criminal Complaint (the "Complaint", 6:22-mj-00201-MK, at ¶ 7).

Kuper, went by the username "Merqzs" on Snapchat and Discord. *Id.* at ¶ 8.  Their internet

relationship took a quick turn to sexual conversations and Kuper began to demand nude images

from MV1 despite being told she was 13.  *Id.* at ¶¶ 7-8, 10.  His demands soon turned to threats

when he told MV1 he would "rape and kill her family" if she did not send the nude images.  *Id.*

at ¶ 7.  MV1 also understood that she was not the only girl Kuper had an online relationship with

and she believed he had posted their "nudes" if they did not do what he wanted.  *Id.* at ¶ 10.

She complied with his demands, sending about 20 images that included her genitals and a

video of her masturbating.  *Id.*  He also sent MV1 pictures of himself masturbating and pictures

of other nude young girls.  But it was not just sexual pictures he wanted; he asked her to cut his

username into her leg or arm and send him a picture.  *Id.*  And he asked this after learning that

she was recovering from previously cutting herself.  He also introduced her to a Discord server

called "Rape Lane," where other users traded nude videos of minors and participated in sexual

chats.  *Id.*

An interview with MV2 confirmed Kuper's modus operandi; he asked MV2 for nude

pictures as well and sent her a video of himself  masturbating.  *Id.* at ¶ 13.  He wanted her to

write his username onto her body.  He told her to call him "daddy," "sir" and "master."

**United States' Motion for Detention**                                                    **Page 2**

A criminal complaint was issued for Kuper charging him with production of child pornography and enticement in violation of 18 U.S.C. § 2251(a) and (e)and 18 U.S.C. § 2422(b). He was arrested on November 10, 2022, at his grandmother's home in Tacoma. Kuper was interviewed by HSI agents and confirmed much of what investigators had already learned. Audio of Detention Hearing in WDWA Part 1, Testimony of HSI Agent Ly Tran, at 5:20-5:24.[1] He admitted that he engaged in online conversations with minors, that his Discord username was "Merqzs," and that he had requested and received images of minors cutting themselves. *Id.* at 5:24-5:39. When asked him how that made him feel, Kuper replied that it made him feel "in control." *Id*. at 5:45-6:03. Kuper also admitted that he had child pornography on his iPhone. *Id.* at 6:04-6:11.

A preliminary review of that iPhone painted a more complete picture of the scope of Kuper's interest in violent, sexual images of young girls and women. *Id.* at 6:11-8:50. His home screen image was of nude female's torso and vagina. The female is covering her nipples with her fingers and appears to have cuts on both of her breasts that are bleeding down her stomach. Between her breasts, the word "Merqs" [sic] is written in black ink. *Id.* at 7:30-8:50.

On the phone there were multiple images of suspected minors in sexually explicit poses, with some of the images dating back to 2018. *Id.* at 6:11-6:43. There were also numerous images of suspected minor victims who had clearly cut themselves; many of the cuts appeared new and bleeding. *Id.* at 6:43-7:07. Some of them had even carved Kuper's Discord username, "Merqzs" into their skin. *Id.* His internet search history revealed searches in October 2022 for

---

[1] A detention hearing was held in the WDWA and HSI Agent Ly Tran testified. An audio recording of that hearing has been obtained (in two parts), but it has not yet been transcribed. The government has provided the audio to the defense and will cite to the approximate time that the facts are elicited for purposes of this motion.

things like "definition of revenge porn, " and "stryo[2] n cutting" and "self harm blood masturbation." *Id.* at 9:05-11:54.

Agents also found a video on the phone that shows further manipulation and abuse of another minor victim[3] (MV3) that he apparently groomed on Discord. *Id.* at 11:54-15:00. Again, it follows the same pattern he used to victimize the minor in Oregon; it appears it was leaked, but agents are still trying to verify that. But, regardless, it demonstrates his intent.

The video is 30 seconds in length and begins with the image of a MV3 recording herself swallowing some type of liquid. *Id.* The video is overlayed with what appears to be a drawing of a penis drawn on the video near MV3's mouth. *Id.* At the bottom of the screen throughout the video are the words "leaked by; Merqzs#0420." The video then changes to a screen that includes MV3's name, age (16) and discord ID and the comments "likes getting groomed, cuts on occasion, fansigns too, clingy, says I love you unironically, also is a habitual liar / super insecure." The next screen is a chat window from October 16, 2022, depicting a conversation between MV3 and Merqzs. MV3 states "pls, don't leak, pls, pls plsplspls u said u don't" which is followed by Merqzs stating "you think I care." *Id.* The video then continues with images of MV3 in sexually explicit poses, masturbating and numerous images of her with "Merqz" written on her stomach and breasts along with "Merqz rape me." There is also an image of the MV3 with what appears to be shallow and recent (bleeding) cuts on her right breast and center chest.

---

[2] Based on internet searches, it appears Stryo is a term used by people who self-harm to refer to the dermis layer of the skin which is below the epidermis and above the fat. It got this name because the dermis looks like Styrofoam.

[3] Agents believe they have identified this minor as a 16-year-old in South Carolina. The investigation is ongoing.

**United States' Motion for Detention**                                    **Page 4**

Kuper had also been in contact with a suspected minor the night before the arrest; she had sent him explicit images of herself. *Id.* at 8:50-9:05.

The forensic review also contained videos that appeared to show Kuper utilizing a second phone in the background.[4]  The picture shows another phone with various contacts including the username of MV1.  A thumb is showing in the picture which makes it appear it was being held by the same person who took the picture:



That phone has not been found.

_____

[4] This information was not considered by Judge Christel in the Western District of Washington because it was discovered right before the hearing and defense did not have time to review. *Id.* at 15:00-24:30.  The government withdrew the testimony rather than continue the hearing.  The government offers it here because it was referenced during the hearing and the government can offer the picture to this Court.  But the government also believes that this Court, like the court in Washington, can find Kuper a danger without this additional evidence.

**United States' Motion for Detention**                                                                          **Page 5**

The preliminary forensic review of the phone seized from Kuper reveals multiple images that appear to be sexually explicit images of minors. Forensic review of his phone remains ongoing.

SA Burtt, the investigating agent, did provide a preliminary listing of 200 hash values for images of child sexual abuse materials (CSAM) found on Kuper's device to the National Center for Missing and Exploited Children (NCMEC). A hash value is often referred to as a "digital fingerprint" that identifies an image; duplicate images will have the same hash value.[5] Of those 200 hash values, three belong to identified children. *See* Govt. Ex. 1, NCMEC Report (filed under seal). This means NCMEC has previously seen these images and identified the child in them. None of these belong to MV1 because SA Burtt has not submitted those images to NCMEC for this purpose yet. Forty-seven of the hash values were recognized by NCMEC, meaning that NCMEC has previously received the same image of CSAM, but the child in the image has not been identified. The remaining 150 hash values have not been seen by NCMEC

Kuper appeared on the criminal complaint in the Western District of Washington and after a detention hearing, was detained as a danger to the community and remanded to the District of Oregon. WDWA Case No. 3:22-mj-05250-DWC (ECF No. 10). Specifically, Judge Christel started with the presumption of detention based on the charges. Audio of Detention Hearing in WDWA Part 2, Ruling of Judge Christel at 22:15-26:30. But Judge Christel concluded that Kuper's strong ties to the community and potential conditions to prohibit access to the internet rebutted the presumption, so the court was required to consider danger and risk of nonappearance. *Id.* Judge Christal concluded that there was no question in his mind Kuper was a danger to the community, but he also needed to consider whether there were conditions that

---

[5] See https://inhope.org/EN/articles/what-is-image-hashing (last visited December 9, 2022).

could mitigate that danger.  Judge Christal looked at Kuper's criminal history and the nature of offense and concluded that there were not any conditions that could address danger to the community, specifically the threats that Kuper made to the victims.  *Id.*

Kuper has now been indicted for production of child pornography and enticement.  ECF No. 8.  He is scheduled to appear in this District on Monday, December 12, 2022.

### Argument

Under the governing bail statute, 18 U.S.C. § 3142, the government bears the burden of proving by a preponderance of the evidence that a defendant is a flight risk; community danger requires clear and convincing proof.  *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).  Four factors help guide release decisions: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the nature and seriousness of the danger posed to the community; and (4) defendant's history and characteristics.  18 U.S.C. § 3142(g).  In this case, all four factors point to detention.

Kuper is charged with committing offenses involving a minor victim in violation of 18 U.S.C. §§ 2251 and 2242.  Therefore, the crimes charged give rise to a statutory rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community.  18 U.S.C. § 3142(e)(3)(E).  Although the burden of persuasion remains on the government, the presumption shifts the burden of production to the defendant to address the danger posed by his release.  *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if a defendant comes forward with evidence to rebut it, however, the presumption remains in the case as an evidentiary finding militating against release.  *Id.*

In terms of presenting evidence at a detention hearing, the government and the defense may proceed by proffer and the rules of evidence do not apply.  18 U.S.C. § 3142(f).  The government is not limited to the charged conduct or the contents of a complaint when presenting evidence to support detention.  *Cf. United States v. Trujillo*, No. 1:21-cr-01235-WJ, 2022 WL 3542556, 2022 U.S. Dist. 147943, *7 (D. New Mexico Aug. 18, 2022) (noting that defendant "cites no authority that prevents the Court from considering uncharged conduct in determining whether he is a danger to the community or a flight risk").   This Court can and should consider "the evidence surrounding the investigation" and other evidence, even of uncharged conduct, to analyze the defendant's history and characteristics and dangerousness.  *Id.*

This Court "may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution."  *United States v. Tolbert*, No. 3:09-CR-56-TAV-HBG, 2017 WL 6003075, at *5, 2017 U.S. Dist. LEXIS 198744, at *13 (E.D. Tenn. Dec. 4, 2017); *cf. United States v. Barone,* 387 F. App'x 88, 90 (2d Cir. 2010) (affirming detention of defendant based, in part, on uncharged crimes).  The reason for this is clear—the question of whether a defendant is a danger turns on a "practical assessment of the defendant's dangerousness" not an analysis of the guilt or innocence of the charged offense.  *Tolbert*, 2017 U.S. Dist. LEXIS 198744, at *14. And that assessment should include all evidence that speaks to that issue, so long as the Court gives it the appropriate weight.  *See United States v. Brown*, No. 22-cr-383, 2022 WL 10080824, 2022 U.S. Dist. LEXIS 188608, *9 (N.D. Ill Oct. 17, 2022 ("The Court is obligated under §3142(g) to consider the danger this defendant will pose to the community if released, and evidence of uncharged conduct may be considered at a detention hearing, as long as it is properly evaluated and weighed." (citations omitted)).

Considering the statutory factors included within § 3142(g), Kuper is a danger to the community.  Kuper was seeking out minor girls over the internet in order to victimize them.  He threatened them with harm if they do comply with his demands.  And as if that was not dangerous enough, he encourages them to engage in cutting so he could be in "control."  This kind of predatory behavior makes him a danger to children.

This was not an isolated event.  It appears he had multiple victims.  And this offense is not his first offense.  He was arrested in 2018 for indecent liberties and rape III and those offenses were adjudicated in 2019; he was sent to a 24-month sex offender treatment program.  Audio Part 2 at 5:00-5:25.  This appears to have done nothing to stop him from preying on young girls.

Kuper's background and characteristics paint a picture of a dangerous, unrepentant sex offender who was only stopped by his arrest this case.  Simply releasing him back to his  home in Tacoma where he has been engaging in this behavior does little to ensure the community will remain safe.  Even with restrictions on movement and internet, there is no way to ensure he does not recover the phone that law enforcement did not find, buy a new phone, or seek out some other way to reach girls who will take pictures of themselves and harm themselves for his sexual gratification.  As the Ninth Circuit has recognized, prohibitions on internet access rely on good faith compliance and can be easily circumvented and manipulated.  *Hir,* 517 F.3d at 1092-93.  Given Kuper's repeated victimization of minors over the internet and lack—as his counsel in Washington admitted—of any job or school to keep him occupied, he fails to offer any basis for believing he will comply with these conditions.

Releasing him to his home also does little to ensure he will not flee.  He is facing over a decade in prison in this case.  And law enforcement now has one of his cell phones which he

**United States' Motion for Detention**                                                          **Page 9**

knows includes images of other victims, likely from places other than Oregon.  He could face additional charges.  This contributes to his risk of nonappearance.  *Santos-Flores*, 794 F.3d at 1092 (recognizing that the severity of the anticipated punishment favors detention).  Combine that with a lack of a job and any other strong ties other than his grandmother and father, he is a risk of flight.

Both MV1 and MV2 through their parents support detention in this case and the government anticipates having a more complete statement to provide to the Court at the detention hearing.[6]

### Conclusion

Kuper should be detained as a danger and a flight risk.

Dated: December 9, 2022

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

s/ *Amy E. Potter*
AMY E. POTTER
Assistant United States Attorney

---

[6] The defense in the WDWA objected to the government reading the statements of the victims on relevancy grounds.  The government submits that the victims, and their guardians when the victims are minors, have a right to be heard at any detention hearing.  18 U.S.C. § 3771.

**United States' Motion for Detention**                                              **Page 10**