WILLIAM M. NARUS, CASB #243633
Acting United States Attorney
District of Oregon
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 6:22-cr-00410-MC |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| **BRANDON KUPER,** | |
| Defendant. | Sentencing: Feb. 25, 2025, at 11:30 a.m. |

In November 2022, defendant Brandon Kuper, 22, used online communication platforms Discord and Snapchat to coerce 13 year-old minor ("MV1") to send him sexually explicit pictures and videos, including self-mutilation or "cutting" content. The federal investigation revealed that, in addition to possessing and disseminating child pornography, Mr. Kuper instructed MV1 and others to cut his online username—Merqzs—into their skin.

To hold Mr. Kuper accountable, to protect MV1 and other minors from similar abuse, and to deter predation on society's most vulnerable members, the government recommends the Court sentence Mr. Kuper to 165 months' imprisonment to be followed by a ten-year term of supervised release.

**United States' Sentencing Memorandum**                                                                                   Page 1

## FACTUAL BACKGROUND

The facts are accurately set forth in paragraphs 14-35 of the presentence investigation report ("PSR").  To promote MV1's anonymity, her age and location are omitted from this memorandum.

### A.   MV1's Initial Interviews

In early November 2022, MV1 explained to investigators that she was introduced to Mr. Kuper by another minor, MV2.  MV1 reported that Mr. Kuper went by the username "Merqzs" on Snapchat and Discord, and that their chatting relationship devolved into Mr. Kuper asking MV1 to cut herself.  MV1 reported that Mr. Kuper's demands turned to threats.  PSR at ¶ 15.  MV1 initially reported that Mr. Kuper announced he would "rape and kill her family," *id.*, and later stated that Mr. Kuper had indicated "he would hurt" MV1 if she did not do what he wanted.[1]  PSR ¶ 19.

MV1 explained that she conveyed her age as 15 and Mr. Kuper conveyed his age as 17.  MV1 explained that she complied with Mr. Kuper's demands, but not by transmitting new images of herself cutting and, instead, by sending images from previous instances of cutting herself and other sexually explicit acts.  PSR ¶ 17.

MV1 also explained to investigators that she believed Mr. Kuper had targeted others.  She recalled him introducing her to a Discord server called "Rape Land."  She also recalled seeing files of "very young girls" on his laptop.  Finally, she reported that Mr. Kuper previously posted revenge pornography from his past relationships if other girls did not comply with his demands.  PSR ¶¶ 20–21.

---

[1]   Because the threats were alleged to have been made via telephone calls or by voice recording, as opposed to written texts, evidence of these threats was not recovered by investigators.

**United States' Sentencing Memorandum**                                                                 **Page 2**

### B. Interview of Mr. Kuper

Following the initial investigation, Mr. Kuper was located in Pierce County, Washington, arrested, and interviewed. He confirmed using Snapchat and Discord, he obfuscated about asking others (minors or adults) to cut themselves for him, and he admitted that he discussed cutting with a minor. He confirmed that a minor had, in fact, cut herself for him but he did not admit any sexual interest. Instead, he explained that having others do that made him feel "in control." *See* Gov. Det. Mem., ECF No. 14. at 3. Mr. Kuper also admitted he had images of child pornography on his cell phone, but he attempted to explain that those images were merely sent to him by others without prompting. PSR ¶ 31.

### C. Digital and Forensic Evidence

Two sources of digital evidence clarified the situation. Chats on MV1's cell phone suggest Mr. Kuper requesting MV1 to "cut for [him]." PSR ¶ 22. Those chats did not specify where on MV1's body Mr. Kuper was asking for cutting to occur but they did reflect Mr. Kuper attempting to overcome MV1's will. For instance, when MV1 pushed back and explained having discontinued self-harm, Mr. Kuper responded, "god you should relapse for me." *Id.*

Mr. Kuper wrote sexual chats to MV1, including writing "fuck sit your juicy ass on me n feel my cock harden," and, with respect to a comment about cutting, he said "ill lick it up."

Mr. Kuper's cell phone contained thirty files constituting child sexual abuse material ("CSAM"). His internet search history revealed searches in October 2022 including "definition of revenge porn, " "stryo[2] n cutting," and "self-harm blood masturbation." *See* Gov. Det. Mem., ECF No. 14. at 4.

---

[2]   Based on open-source internet searches, it appears "stryo" is a term used by people who self-harm to refer to the dermis layer of the skin which is below the epidermis and above the fat. It got this name because the dermis looks like Styrofoam.

**United States' Sentencing Memorandum**                                                                 **Page 3**

A review of Mr. Kuper's cell phone also confirmed MV1's allegations that Mr. Kuper had produced revenge pornography. He labeled a 30-second revenge pornography video with his username—"leaked by Merqzs"—to reflect that he was responsible for releasing the video, which listed another child (MV3), her age, her Instagram account, her Discord username, as well as traits Mr. Kuper assigned to MV3, including "likes getting groomed" and "cuts on occasion." PSR ¶ 33. The remainder of that video includes sexually explicit videos or images of MV3, as well as one image with the word "Merqzs" carved into her body. PSR ¶ 34.[3]

A criminal complaint was issued for Mr. Kuper charging him with production of child pornography and enticement in violation of 18 U.S.C. § 2251(a) and (e) and 18 U.S.C. § 2422(b). He was arrested on November 10, 2022, at his grandmother's home in Tacoma, Washington, and has been in custody since then. Mr. Kuper was thereafter indicted for production of child pornography and enticement. ECF No. 8.

## THE PLEA AGREEMENT AND GUIDELINES

### A.     The Plea Agreement

On November 20, 2024, Mr. Kuper pleaded guilty to Count Two of the indictment in this matter, which charges him with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). At sentencing, the government will move to dismiss Count One, which charges him with Sexual Exploitation and Attempted Sexual Exploitation of Children.

---

[3] Investigators did not locate corroborating digital evidence suggesting that Mr. Kuper requested these materials from MV3 or asked for sexually explicit material to be made. Offline conversations with MV1 or MV3 were not recorded. Investigators' attempts to obtain additional evidence from MV3 were unsuccessful, as MV3 had lost access to her digital device months prior to contact by investigators. Accordingly, there are no federal charges applicable to MV3.

Count Two of the indictment carries a mandatory minimum sentence of 10 years' imprisonment and up to lifetime imprisonment, a $250,000 fine, and a supervised release term of five years to life.

B. **The Guidelines**

The PSR sets forth its guidelines calculations in paragraphs 40 through 53.[4] The PSR calculates a Total Offense Level of 39. The parties' agreed-upon Total Offense Level is 37.[5] Mr. Kuper's Criminal History Category is I. If the Court applies the Total Offense Level calculated in the PSR, the resulting advisory guidelines range is 262-327 months' imprisonment. If the Court applies the Total Offense Level calculated by the parties, the resulting advisory guidelines range is 210-262.

Based on the parties' negotiations, and considering the factors set forth in 18 U.S.C. § 3553(a), the parties jointly recommend a sentence of 165 months' imprisonment. This would require a 5-level downward variance from PSR's calculated Total Offense Level or a 3-level downward variance from the parties' calculated Total Offense Level. In either event, the resulting guidelines range would be 151-188 months' imprisonment.

C. **Term of Supervised Release**

The parties made no agreement as to a term of supervised release. Title 18, United States Code, Section § 3583(k) provides for a term of supervised release of five years to life. In the PSR, Probation recommends a five-year term of supervised release. The government

---

[4] Notably, the Total Offense Level of 39 calculated in ¶ 53 of the PSR is two levels lower than the Total Offense Level of 41 noted on the cover page and in ¶¶ 105, 122. The undersigned brought this discrepancy to the attention of the PSR writer, who agreed and noted that an addendum will be forthcoming.

[5] The parties' agreed-upon Total Offense Level does not apply USSG § 2G2.1(b)(6)(B)—the two-level "use of computer" adjustment.

**United States' Sentencing Memorandum**                                                                                          **Page 5**

recommends a ten-year term based, in part, on Mr. Kuper's relevant criminal history, acute predatory choices in this case, and the need for careful ongoing supervision during a formative period upon Mr. Kuper's release (his thirties).  The government concurs with the standard and special conditions of supervision that the PSR lays out, which include non-communication with any minor victim or their family members (Special Condition #2) and sex offense-specific assessment and treatment (Special Conditions #11 and 12).

### D. Victim Impact Statement and Restitution

The identified victim in this case, MV1, and her mother have both provided victim impact statements, which have been submitted to this Court via letter, copying Counsel for Mr. Kuper.  MV1 and her mother have advised the government that they intend to read their victim impact statements in person at the at the time of the sentencing hearing.

Additionally, as of February 2025, MV1 has passed along the initial framework of a restitution request, to include compensation for seized digital devices[6] and reimbursement for transportation to and from counseling appointments.  The government awaits additional documentation and information supporting the request, and recommends the Court bifurcate the issue of restitution and set out a hearing ninety days, during which time the government will confer with MV1 and her mother and propose a request to Counsel for Mr. Kuper.

/ / /


/ / /

---

[6] The government notes that these devices were, in fact, seized by the government as part of its investigation given that they contained suspected CSAM.  The government is currently assessing whether these devices can be factory reset and returned.

**United States' Sentencing Memorandum**                                                              **Page 6**

## ARGUMENT

Despite his youth, Mr. Kuper engaged in definitional sexual predation. He used social media to charm MV1, flirt with her, and promote self-harm. He did all of this knowing that MV1's insecurity and vulnerability were at their apex. "God you should relapse for me." MV1 knew that, if she did not comply, there would be consequences. The revenge pornography found in Mr. Kuper's cell phone makes clear that he was willing to act on this threats. The investigation revealed, and the evidence amply shows, that Mr. Kuper viewed minors—and their fragility—as objects for his own sexual gratification. Their difficulties and vulnerability fit well into his grotesque fetish and satisfied his desire to be "in control."

Mr. Kuper's dark choice to target minors in this way is brightened only by the fact that, unlike other similarly situated predators, he did not endeavor to meet with or put his hands on MV1 or other known minors. But his willingness and ability to visit this harm on multiple minors, even from afar, weighs heavily in favor of a significant sentence of imprisonment. Mr. Kuper's harms were felt coast to coast, whether it be his choice to predate upon MV1 in Oregon or to create revenge pornography showing his named carved into a minor in South Carolina. Distance did not dampen the pain these children felt—whether by way of the physical acts Mr. Kuper begged them to carry out or the fear and embarrassment from his threats and revenge.

Sextortion is defined as "extortion in which a perpetrator threatens to expose sexually compromising information (such as sexually explicit private images or videos of the victim) unless the victim meets certain demands."[7] The FBI and HSI received 13,000 sextortion reports involving minors between 2021 and 2023. The reports concerned 12,600 unique victims, 20 of

---

[7]     "sextortion." *Merriam-Webster.com*. 2025. https://www.merriam-webster.com (19 Feb. 2025).

**United States' Sentencing Memorandum**                                                                                        **Page 7**

whom committed suicide.[8]  Here, the minors who Mr. Kuper threatened had already engaged in self-harm, rendering them more vulnerable than a typical sextortion victim.  Despite this, only MV1's courage to speak up ended the cycle and led to accountability for her tormentor.

The jointly-recommended sentence of 165 months will protect MV1 and other minors from Mr. Kuper's continued predation while sparing MV1 from having to relive this trauma by testifying at trial.  Such a sentence reflects the seriousness of Mr. Kuper's crimes, provides just punishment, and affords adequate deterrence to other potential sexual predators, young or old. Proportionate to Mr. Kuper's age, this sentence reflects all of his twenties and a part of his thirties, to be followed by a term of supervised release in which he will be required to obtain treatment, be barred from contact with the victims, their families, or other children, and register as a sex offender.  Finally, a significant sentence in this matter may provide some semblance of peace to MV1 and her family such that they may begin to heal.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends the Court adopt the parties jointly-recommended sentence of 165 months' imprisonment, and the government recommends a ten-year term of supervised release as well as a $100 fee assessment.

Dated: February 19, 2025

          Respectfully submitted,

          WILLIAM M. NARUS
          Acting United States Attorney

          */s/ William M. McLaren*
          WILLIAM M. McLAREN
          Assistant United States Attorney

---

[8]    FBI, SEXTORTION: A GROWING THREAT PREYING UPON OUR NATION'S TEENS (Jan. 17, 2024), available [here](#).