WILLIAM M. NARUS, CASB #243633
Acting United States Attorney
District of Oregon
**WILLIAM M. McLAREN, OSB #143836**
Assistant United States Attorney
William.McLaren@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:22-cr-00410-MC |
| v. | SUPPLEMENTAL FILING REGARDING UNOPPOSED RESTITUTION REQUEST |
| BRANDON KUPER, | |
| **Defendant.** | |

The government moves that defendant Brandon Kuper be ordered to pay $2,067.26 in restitution to Minor Victim 1 (MV1). Counsel for Mr. Kuper has been advised of this restitution request and has informed the undersigned that Mr. Kuper does not object. Counsel for Mr. Kuper requests that the Court's restitution order reflect (1) restitution shall be paid in monthly installments of 10% of gross monthly earnings while in custody; (2) any unpaid balance upon release shall be paid in 10% installments until restitution is paid in full; and (3) interest shall be waived.

The restitution request is outlined below.

**PROCEDURAL BACKGROUND**

On February 19, 2025, this Court sentenced Mr. Kuper for his coercion and enticement of MV1. ECF No. 57. The Court sentenced Mr. Kuper to 165 months' imprisonment and set out a restitution hearing for June 3, 2025. ECF No. 61. The hearing was continued to July 8, 2025, given that the government was working with MV1's family to obtain documentation supporting their modest restitution request in this matter.

The plea agreement in this matter contemplated restitution as determined by the Court, specifically "The Court shall order restitution to the victim in the full amount of the victim's losses as determined by the Court . . . ." ECF No. 47 at ¶ 14.

**REQUEST FOR RESTITUTION**

The Presentence Investigation Report, on its cover page and ¶¶ 10, 36–37, and 116 discusses the fact that restitution is mandatory per 18 U.S.C. 2259(a), (b)(1), and (b)(4), and that, at the time of sentencing, MV1 had not yet made a restitution request.

As of the time of this filing, the government has received additional information from MV1's family and the requests include:

- Mileage costs to and from therapy appointments in the years since the offense; and
- Partial costs associated with the seizure of a cellular phone from MV1, as well as the costs associated with the replacement device.

Each category is discussed briefly below.

/ / /

/ / /

### A. Mileage Costs

According to records obtained from KIDS Center in Bend, Oregon, MV1 has undergone fifty-two therapy sessions since the offense occurred in 2022. The government used a document containing all of the scheduled therapy sessions as well as government-estimated mileage rates to assess approximate costs over the years. In total, the claimed mileage costs for the fifty-two therapy sessions are $567.28.

### B. Cellular Phones

At the outset of the investigation, investigators interviewed MV1, who reported sexually explicit conversations and exchanges with Mr. Kuper. MV1 described Mr. Kuper seeking sexually explicit videos and images, as well as sadistic and masochistic imagery from MV1. As a result of this information, agents took MV1's cellular phone—an iPhone 11—which MV1 described as being used to communicate with Mr. Kuper, into evidence ("Evidence Phone"). That cellular phone was retained as evidence throughout the duration of the case. Agents also seized and searched Mr. Kuper's iPhone pursuant to a warrant, and found it contain child sex abuse material. Mr. Kuper's iPhone was also retained and ultimately forfeited as a result of his conviction.

In the intervening years, MV1's family replaced MV1's cellular phone ("Replacement Phone") but continued to pay against the Evidence Phone despite it being in the possession of agents. According to MV1's mother, she continued to pay off the Evidence Phone, which cost $599.99 at the time of purchase in 2019, even after its seizure. She also paid $1099.99 to purchase the Replacement Phone—an iPhone 13—in July 2022. Despite her attempts, MV1's mother was unable to obtain billing records related to the Evidence Phone or the Replacement Phone. Her service provider was able to confirm the models and approximate purchase dates of the phones, which she has represented to the assigned case agent.

Recognizing MV1's family's request for restitution, and their continued possession of the Evidence Phone, the assigned HSI agent coordinated with the digital forensics laboratory that analyzed the Evidence Phone to have it wiped and factory reset. It was made available as of May 29, 2025. Basic research suggests the present value of a used iPhone 11 is, at the outside, approximately $200.[1]

Despite their ultimate ability to recover the phone through which Mr. Kuper victimized MV1, years lapsed between MV1's family's loss of use of the Evidence Phone given its contents. MV1 cannot be said to be responsible for that device's evidentiary contents, especially given Mr. Kuper's choice to coerce MV1 into creating such content. *See* PSR at pp.2, 11 at ¶ 1.

Accordingly, MV1 seeks recovery of the costs paid for the Evidence Phone as well as the cost of the Replacement Phone, less $200 for the value of the returned iPhone 11, for a total of $1499.98. Combined with the mileage costs discussed above, MV1's total restitution request is $2,067.26.

## DISCUSSION

It is the government's burden to prove the proper amount of restitution, and the loss sustained by the victim as a result of the offense, by a preponderance of the evidence. 18 U.S.C. § 3664(e). There is no formulaic answer for determining restitution. In *Paroline v. United States*, the Supreme Court stated that many factors can be considered in determining restitution, and "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount." *Paroline v. United States*, 572 U.S. 434, 459-61 (2014).

---

[1] This is an estimate only based on various websites. *See* Gadgetpickup.com, *Sell your Apple iPhone* (last accessed June 13, 2025) (estimating a cash-in value of up to $184 for a standard iPhone 11); *see also* SellCell.com, *How Much is My iPhone Worth?* (last accessed June 13, 2025), *available at* https://www.sellcell.com/how-much-is-my-iphone-worth/ (estimating, at most, a value of $192 for a standard iPhone 11 with increased storage capacity).

MV1's modest restitution request should be weighed by this Court in light of fifty-two therapy sessions following the offenses giving rise to this case. The reverberations of Mr. Kuper's choice to victimize an adolescent child, at the height of vulnerability and experiencing extraordinary difficulties, are not theoretical. Luckily for MV1 and MV1's family, help was made available to them and their costs were defrayed. That lessens the ultimate restitution request but does not offset their need, and right, to be made whole.

Regarding the cost associated with the phone's, the costs incurred as a result of loss of use of the device were not elective by MV1. Nor can it be argued that law enforcement caused the losses, given that Mr. Kuper created the conditions under which MV1's phone came to contain child sex abuse material. Wiping and returning a phone prior this case's adjudication was not an option, given its evidentiary significance. The fact that the Evidence Phone was ultimately returned following adjudication, years into MV1's family's costs associated with replacing and continuing to pay against that phone, does not offset those costs any more than the present value of an old, used, and tainted device.[2]

The government submits that MV1's request is supported by the underlying facts, years of therapeutic requirements, and the inconveniences and costs associated with being the subject of Mr. Kuper's federal offense. While GE 2 supplies costs in the hundreds of dollars accrued since 2022, it does not capture the hours spent by MV1's parents in shuttling MV1 to and from therapy sessions, or working with MV1 toward rehabilitation and recovery. It does not capture the future psychic trauma and necessary treatment as MV1 ages and develops, and it is only the available snapshot of costs thus far collected by a family grappling with Mr. Kuper's victimization of MV1.

---

[2]     As of this filing, MV1's family has not yet recovered the Evidence Phone. Their choice to want nothing to do with that device would be understandable.

By law, no formula or algorithm is necessary to support MV1's request. Nor is a formula or algorithm necessary to understand MV1's needs as a result of the offense.

Mr. Kuper's victimization of MV1 caused real harm. The least he can do is contribute to the relatively minor expenses associated with MV1's trauma and incurred costs as a result of the loss of use of a device.

## CONCLUSION

The government respectfully requests that this Court order Mr. Kuper to pay restitution in the requested amount of $2,067.26 for MV1.

Mr. Kuper does not oppose this restitution sum and requests the Court enter a restitution order reflecting that payments are to be made in monthly installments of 10% of Mr. Kuper's monthly gross earnings while in custody and that any unpaid balance upon release shall be paid in monthly installments of 10% until restitution is paid in full. Mr. Kuper requests that interest be waived.

Dated: July 7, 2025

>Respectfully submitted,
>
>WILLIAM M. NARUS
>Acting United States Attorney
>
>s/ *William M. McLaren*
>WILLIAM M. McLAREN
>Assistant United States Attorney